UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-21863-CIV-MARTINEZ/GOODMAN

ALPHONSINE VERNEUS,

    Plaintiff,

v.

AXIS SURPLUS INSURANCE CO.,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S
## AMENDED MOTION TO STRIKE PLAINTIFF'S APPRAISER

Defendant Axis Surplus Insurance Company moves to strike the appraiser that Plaintiff Alphonsine Verneus selected in this case, Rami Boaziz, because he is not "impartial." [ECF No. 51]. Verneus filed an opposition response, Axis filed a reply, and Verneus belatedly[1] filed an authorized sur-reply. [ECF Nos. 53–54; 65]. United States District Judge Jose E. Martinez referred the motion to strike to the Undersigned. [ECF No. 52].

For the reasons outlined below, the Undersigned **grants** the motion to strike. By way of summary, when Judge Martinez granted Verneus's petition for appraisal, he

---

[1] The Undersigned granted Verneus leave to file a sur-reply by July 9, 2018, but he filed it on July 10, and without first filing a motion for an enlargement of time (that motion would have needed to be filed before July 9) or filing a post-submission motion for leave to file out of time. [ECF Nos. 64–65]. Verneus simply filed an untimely sur-reply.

ordered the parties to "select a competent *and impartial* appraiser." [ECF No. 48, p. 1 (emphasis added)]. Even though the parties' insurance contract simply requires the selection of a "competent" appraiser [ECF No. 38-3, p. 11], Judge Martinez's Order remains valid and enforceable. No party ever asked Judge Martinez to vacate, reconsider, or stay the Order. Impartiality is therefore a requirement for the parties' chosen appraisers.

The Undersigned finds that Boaziz is *not* an impartial appraiser for several reasons. Simply put, Boaziz was involved in the initial appraisal of the damages caused by the subject fire, so he has an interest in giving a second appraisal that does not differ much from his first. Moreover, significant questions exist concerning his ownership of an appraisal company, Stellar Public Adjusting Services LLC, which (a) is contractually entitled to a contingency fee from any recovery in this case and (b) has a long-term involvement with Verneus's counsel (i.e., the Perry and Neblett, P.A. firm). Although Verneus says that Boaziz is no longer a principal of Stellar, his LinkedIn page and some corporate documents suggest otherwise, and Verneus does not sufficiently explain those discrepancies.

Therefore, given the less-than-clear factual scenario, the uncertainties surrounding the appraiser's status with the appraisal company and with Verneus's law firm, and other reasons outlines later, it is prudent to **grant** the motion to strike and thus avoid any lack of impartiality.

I. **Factual and Procedural Background**

   A. *General Procedural History*

This action stems from a claim for fire-related damages to residential property located in Fort Lauderdale, Florida. Verneus (the insured) sued Axis (the insurer) in state court for, among other things, breach of their insurance contract. The matter was then removed to this Court.

   B. *The Insurance Policy and Judge Martinez's Appraisal Order*

The insurance policy contains an appraisal clause that sets forth how an appraisal will take place, including how the parties must select a "competent appraiser":

> **Appraisal**. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a *competent* appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

[ECF No. 38-3, p. 11 (second emphasis added)].

Verneus filed a petition for an appraisal. [ECF No. 38]. Axis initially opposed the petition but later withdrew its opposition and agreed to proceed with the appraisal process delineated in the insurance contract. [ECF Nos. 41; 47].

Judge Martinez then issued an Order granting the now-unopposed petition for appraisal. [ECF No. 48]. In that Order, Judge Martinez directed the parties to each "select a competent *and impartial* appraiser" and then directed those two appraisers to choose an Umpire. [ECF No. 48, p. 1 (emphasis added)]. As its appraiser, Verneus selected Boaziz. [ECF No. 51-2].

C.    *Verneus's Arguments to Strike Boaziz*

Axis now moves to strike Verneus's selected appraiser. [ECF No. 51]. Axis contends that his selection violates Judge Martinez's Order because Boaziz is not impartial. Axis submits that Boaziz is not impartial for three reasons.

First, Axis contends that Boaziz was the public adjuster involved in submitting the Verneus's original scope of loss. [ECF No. 54, p. 5]. Axis argues that, as a result, Boaziz has an interest in "supporting that which he created and submitted on behalf of his client." [ECF No. 54, p. 5].

Second, Axis says that Boaziz is a principal of Stellar, a company that entered into a contingency-type, public-adjusting-services contract with Verneus on the date of the fire loss (August 2015). [ECF No. 51, pp. 1–2]. Axis argues that, consequently, Boaziz has a vested interest to earn as much as possible for Stellar and will therefore increase the amount of his appraisal because his "earnings are tied directly to the amount of the appraisal award." [ECF No. 51, p. 2].

Third, Axis submits that "Boaziz and Stellar have a consistent and long-standing relationship" with Verneus's counsel, the Perry and Neblett firm. [ECF No. 54, p. 4]. To show this, Axis flags six other cases (since 2015) in which Stellar has been involved with the Perry and Neblett firm. [ECF No. 54, p. 4].

**D.**     *The Public Adjusting Agreement Between Stellar and Verneus*

In 2015, Verneus and Stellar entered into an Agreement for Public Adjusting Services, in which Verneus agreed to pay and assigned to Stellar 10% of the entire insurance proceeds for all coverages under the policy. [ECF No. 51-3, p. 1]. In addition, in an October 2015 letter, written on Stellar letterhead, Boaziz, on behalf of Verneus, requested supplemental payment under the policy. [ECF No. 51-5]. The letter advised that Stellar represents Verneus as his public adjuster. [ECF No. 51-5, p. 1].

Later that month, Stellar billed Verneus $1,773.31, which is designated as 10% of the loss valuation. [ECF No. 51-7, p. 1]. In another invoice dated February 2016, Stellar billed Verneus $146.95, which is also described as being 10% of the loss valuation. [ECF No. 51-7, p. 2]. The lawsuit Verneus filed against Axis seeks supplemental payments above and beyond the payments made to date.

**E.**     *The Connection Between Stellar and Boaziz*

In 2012, Joshua Evans, who described himself as the company's managing member, submitted a certificate of conversion and other related documents requesting that the Florida Department of State convert Stellar from a corporation to a limited-

liability company. [ECF No. 54-2]. The documents submitted demonstrate that Stellar was originally formed in July 2009 as an "S" corporation and that Boaziz was its vice president. [ECF No. 54-2, p. 6]. The documents represent that Boaziz will now be a manager of the new LLC version of Stellar. [ECF No. 54-2, p. 8].

In its 2013 annual report, Stellar listed Boaziz as a manager. [ECF No. 54-2, p. 10]. His address is listed as 2450 NE Miami Gardens Drive, the same address as Evans, who is listed as the managing member. [ECF No. 54-2, p. 10].

In its 2014 annual report, Stellar listed Boaziz as the only manager (no one was listed as a member, manager, or managing member). [ECF No. 54-2, p. 11]. But the report also shows Boaziz's electronic signature as "president." [ECF No. 54-2, p. 11]. It also listed Boaziz as the registered agent, with the same NE Miami Gardens Drive address. [ECF No. 54-2, p. 11].

In its 2015 annual report, Stellar again listed Boaziz as the only manager. [ECF No. 54-2, p. 12]. The report again designates Boaziz as the registered agent, at the same address. [ECF No. 54-2, p. 12]. Boaziz also again electronically signed the report as "president" of the company. [ECF No. 54-2, p. 12].

In 2016, Stellar filed Articles of Amendment, removing Boaziz as a manager and adding the "Rami Boaziz Living Trust" as the managing member. [ECF No. 54-2, p. 16]. The Rami Boaziz Living Trust was listed as having the same NE Miami Gardens Drive address that Boaziz lists. Stellar also added "Extra Point Investments of Delaware LLC"

6

as another managing member. [ECF No. 54-2, p. 16]. Boaziz signed the Articles of Amendment as a member or authorized representative of a member of the company. [ECF No. 54-2, p. 17].

In its 2016 annual report, Stellar listed Boaziz as its registered agent and represented that the Rami Boaziz Living Trust and Extra Point Investments of Delaware LLC were both managing members. [ECF No. 54-2, p. 18]. Both Boaziz and the Rami Boaziz Living Trust have the same NE Miami Gardens Drive address. [ECF No. 54-2, p. 18]. And Boaziz electronically signed the report as "president." [ECF No. 54-2, p. 18].

In its 2017 annual report, Stellar listed the same information: Boaziz as the registered agent, the Rami Boaziz Living Trust as one of the managing members, the same address for both he and the living trust bearing his name, and Boaziz's electronic signature as Stellar's "president." [ECF No. 54-2, p. 19].

Lastly, in his LinkedIn page (printed on August 10, 2017, and filed of record), Boaziz listed himself as "owner" of "Stellar Public Adjusting Services" from May 2010 to the present. [ECF No. 54-3].

F.  *Verneus's Arguments Against Striking Boaziz as his Appraiser*

For her part, Verneus claims that "managerial and ownership structures change over time and Mr. Boaziz is no longer a principal, manager or owner of Stellar Public Adjusting." [ECF No. 53, p. 7]. Verneus submits that, instead, Boaziz is "merely an adjuster at Stellar." [ECF Nos. 53, p. 5; 53-1, p. 1]. Verneus also represents that Boaziz

7

"conducts Appraisals and will conduct the Appraisal in this matter in his individual professional capacity as an appraiser, separate from and without any affiliation with Stellar." [ECF Nos. 53, p. 5; 53-1, p. 1].

Verneus and her counsel also deny that Boaziz is going to be compensated on a contingency basis for his participation in the appraisal. [ECF Nos. 53, pp. 1–2; 53-1, p. 2]. But Verneus adds that, even if Boaziz was being paid on a contingency basis, then he is still able to be impartial and remain in the case. [ECF No. 53, p. 2]. Verneus argues that, under Florida law, "an appraiser can be impartial even if the compensation structure is of a contingency nature." [ECF No. 65, p. 2].

In addition, Verneus contends that Axis's "major concern" -- that Boaziz's appraisal will be "too high" -- is a "non-issue" because the appraisal process already provides a reconciliation mechanism for when the two appraisers return sizably different estimates. [ECF No. 53, p. 10]. Specifically, Judge Martinez's Order calls for the selection of an umpire "to bridge the gap between the two estimates." [ECF No. 53, p. 10]. Verneus argues that Axis should really worry about the *umpire's* impartiality "since it is the agreement of the umpire and either one of the appraisers which can bind the parties to the Appraisal award." [ECF No. 53, p. 10].

Concerning Boaziz's LinkedIn page, Verneus does not actually contend that the representations in it are incorrect, false, or misleading, or that Boaziz did not in fact say those things about his status as a Stellar owner on social media. Instead, Verneus

8

characterizes the LinkedIn evidence Axis submitted as "extremely unreliable" and bearing "absolutely zero probative value for this Court to consider." [ECF No. 65, p. 4]. Verneus adds that the "only reliable documentation to evidence the current and legal ownership of Stellar Public Adjusting, LLC., [sic] comes from the Florida Division of Corporations which as of 2017 does not list Rami Boaziz as a principal of Stellar." [ECF No. 65, p. 4 (emphasis removed)].

As to the prior cases involving the Perry and Neblett firm and Stellar, Verneus responds that "this is just as inconsequential as an attorney and insurer being tied together on other matters and serves no probative value.' [ECF No. 65, p. 2]. Calling it a "minor affiliation," Verneus argues that her attorneys' relationship with Stellar "does not form the basis for a declaration that Mr. Boaziz cannot be impartial in this matter and has nothing to do with whether Mr. Boaziz is an impartial appraiser in *this* case." [ECF No. 65, p. 2].

Lastly, Verneus notes that the insurance policy at issue does not require that a party-appointed appraiser be "impartial." [ECF No. 53, pp. 2–3].

**II.     Legal Principles and Analysis**

   **A.     *Judge Martinez's Order is valid and enforceable and requires Verneus to choose an impartial appraiser (and not just a competent one).***

It is a "basic proposition that all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal,

9

but, absent a stay, he must comply promptly with the order pending appeal." *Id.* Indeed, "[p]ersons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Id.*; *see also Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1208 (11th Cir. 1985) ("As a fundamental proposition, orders of the court must be obeyed until reversed by orderly review or disrobed of authority by delay or frustration in the appellate process . . . . If the order appears to be incorrect, the proper course of action lies in review[.]") (internal quotations and citations omitted).

Here, Verneus is correct that the relevant policy language requires only that each party select an appraiser who is "competent." [ECF No. 38-3, p. 11]. Judge Martinez's *Order*, however, includes an impartiality requirement for the party-selected appraisers. [ECF No. 48, p. 1]. Verneus did not object to the Order's language requiring each side to appoint an "impartial" appraiser and did not move for clarification, reconsideration, or a stay of the Order. Consequently, Verneus is required to comply with the existing Order and select a competent *and impartial* appraiser.

The question now is: Did Verneus comply? Is Boaziz an impartial appraiser?

**B.** *Boaziz is not an impartial appraiser.*

Verneus contends that the appraiser she selected is impartial and as authority for that she principally relies on *Rios v. Tri-State Insurance Company*, 714 So. 2d 547 (Fla. 3d DCA 1998) and its progeny. In *Rios*, the parties had entered into an insurance contract

10

that contained an appraisal clause requiring each party to select "a competent, *independent* appraiser." *Id.* at 548. The insurer argued that the insureds' appraiser was not "independent" because the appraiser's compensation was based on a contingency percentage of the insureds' recovery. *Id.* at 549.

The Third District Court of Appeal posed "the threshold question" as "how to interpret the term 'independent appraiser' as used in the insurance policy." *Id.* The policy did not define "independent appraiser," and the parties presented no on-point authority on the issue. *Id.* So the Court relied on dictionary definitions of "independent" to conclude that the contract language calls for the appointment of "an outside appraiser, unaffiliated with the parties." *Id.* Therefore, the Court reasoned, a party "cannot appoint himself, herself, or itself, nor can a party appoint the party's employee." *Id.* (internal citation omitted). Likewise, the Court concluded, the entity designated to do the appraisal "cannot be a firm in which the appointing party has an ownership interest." *Id.*

The *Rios* Court then pointed out that the appraisal clause did not limit the type of compensation which may be paid. *Id.* It therefore declined to interpret "independent" to limit the type of compensation which can be paid. *Id.*

Instead, as a "more workable" approach to the issue, and even though the dispute concerned the designation of an appraiser, the Court relied on the Code of Ethics for Arbitrators in Commercial Disputes, promulgated by the American

11

Arbitration Association and American Bar Association. *Id.* at 550. The Court focused on Canon IIA(1) of the Code, which stated at the time that "persons who are requested to serve as arbitrators should, before accepting, disclose (1) any direct or indirect financial or personal interest in the outcome of the arbitration[.]" *Id.* The disclosure is required of nonneutral as well as neutral arbiters, and it is intended to ferret out potential bias. *Id.* And in its case, because the contingency the insureds' appraiser would collect amounted to a direct financial interest in the outcome of the litigation, there should have been at least voluntary disclosure. *Id.*

The *Rios* Court then applied to its facts the next part of the analysis under the Code: "whether a direct or indirect financial interest in the outcome of the arbitration requires the disqualification of a party-appointed arbitrator." *Id.* The Court held that no qualification was required, reasoning that "[t]he balance struck by the Code is that such an interest will not be a basis for disqualification, but it must be disclosed[.]" *Id.*

The Third District Court of Appeal then extended its holding in *Rios* to cover appraisal clauses requiring "disinterested" appraisers (rather than "independent" ones). *Galvis v. Allstate Ins. Co.*, 721 So. 2d 421, 421 (Fla. 3d DCA 1998). In *Galvis*, the Court held that a contingent-fee appraiser was competent and disinterested but required the parties to make the disclosures required by the Code of Ethics. *Id.*

But *Rios*, a 1998 case, was based on the then-existing version of Code of Ethics, a version that "did not explicitly address the neutrality of arbitrators, but simply required

12

disclosure of any direct or indirect financial interest in the outcome of the proceeding." *Florida Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488, 495 (Fla. 5th DCA 2014). But as explained in *Branco*, the AAA and ABA revised its Code of Ethics in March 2004, which "change[d] the landscape considerably, thus, *undercutting the continued viability of the holding in Rios*." *Id.* (emphasis added).

As outlined in *Branco*:

> Unlike the Code of Ethics relied upon in *Rios*, the current Code of Ethics establishes a presumption of neutrality for all arbitrators, including party-appointed arbitrators. **This fundamental change undermines the *Rios* holding,** particularly when, as here, the contract requires the appointment of "disinterested" appraisers. If an appraiser owes his nominating party a "fiduciary duty of loyalty" or a "confidential relationship," as do attorneys, then "[t]he existence of such a relationship between a litigant and an [appraiser] creates too great a likelihood that the [appraiser] will be incapable of rendering a fair judgment."

*Id.* (emphasis added).

In this case, the parties are subject to a never-challenged Court Order requiring an "impartial" appraiser. Because that term is not in the insurance policy, it is not defined. According to Black's Law Dictionary, "impartial" means "[n]ot favoring one side more than another; unbiased and disinterested; unswayed by personal interest." *Impartial*, Black's Law Dictionary (10th ed. 2014).

So, using the dictionary definition, is Boaziz an appraiser who would not favor Verneus over the insurer? Is he an appraiser who is unbiased? And will he be unswayed by personal interest?

If the Code of Ethics relied upon by *Rios* were still in effect and if the Undersigned's assessment was limited to the one fact of Stellar being paid on a contingency basis, then the answers to all these questions might well be "yes." But the Code of Ethics from 1998 is no longer valid, having been replaced with language evidencing a presumption of neutrality for arbitrators (and, by extension, for appraisers, under the analogy used in *Rios*). *Branco*, 148 So. 3d at 495. Moreover, there are other factors present besides the Stellar contingency arrangement that inform the Undersigned's assessment that the answers cannot in fact be all "yeses."

First, Boaziz is the appraiser who already examined the property and prepared the demand for payment for Verneus. He is the one who submitted Verneus's scope of loss to the defendant insurer, Axis. So he has an interest to protect. As a professional who presumably values his reputation, Boaziz is unlikely to reach a conclusion as an appraiser that is significantly different from the work product he already produced.

Second, Stellar has a vested interest in obtaining the highest possible recovery because its compensation will be a percentage of it.[2] Boaziz used to be a managing member of Stellar and now a trust using his name is the managing member of Stellar. And Verneus's counsel has not explained the relationship between Boaziz and the Rami Boaziz Living Trust.

---

[2] To be sure, the Undersigned is not setting forth a rule that an appraiser cannot be impartial whenever his financial compensation is based on a percentage of the recovery. Rather, as is apparent, Stellar's contingency contract is only one of *several* factors underlying this decision.

14

Third, Verneus's counsel has not sufficiently demonstrated that Boaziz's apparent roles as Stellar's president and registered agent (and perhaps more) are not grounds that generate a concern over partiality. Although Verneus is correct that Stellar's corporate records no longer list Boaziz as an owner or managing member, and instead name the Rami Boaziz Living Trust as the managing member, Verneus does not provide any information about the living trust or Boaziz's connection to the trust. Nor does Verneus say anything about Boaziz's signing the annual reports as the "president" of Stellar or about the fact that her address as registered agent and Stellar's mailing address is the same as the address for the living trust.

Fourth, although Verneus counsel stridently contends that Boaziz has no ownership interest in Stellar, his LinkedIn page unequivocally lists him as an owner. Verneus has not provided an adequate explanation for this contradiction.

Fifth, Stellar has a longstanding relationship with the Verneus's law firm, Perry and Neblett. The Perry and Neblett firm do not dispute this affiliation, but essentially asks the Undersigned to ignore it as minor and inconsequential. But they give the Undersigned no good reason to automatically turn a blind eye.

Sixth, Verneus and her counsel did not voluntarily disclose Boaziz's connection to Stellar or his history with the law firm. Keeping with the arbitration analogy, section 10 of the Federal Arbitration Act provides that a federal district court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators."

15

9 U.S.C. § 10(a)(2). As the Eleventh Circuit noted in *University Commons-Urbana, Limited v. Universal Constructors Incorporated*, 304 F.3d 1331 (11th Cir. 2002): "To maintain this sense of impartiality, the law imposes 'the simple requirement that arbitrators disclose to the parties any dealing that might create an impression of possible bias.'" *Id.* at 1338 (citing *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 149 (1968)). Although the Undersigned is not concluding that the failure to disclose this information here is by itself sufficient evidence of an impression of possible bias, the non-disclosure is a factor that can be considered, especially when the Court is addressing only the *selection* of an appraiser, as opposed to an effort to vacate an arbitration award. *Cf. RDC Golf of Florida I, Inc. v. Apostolicas*, 925 So. 2d 1082, 1094 (Fla. 5th DCA 2006) (explaining that whether an arbitration award may be vacated based on undisclosed information that creates a reasonable impression of partiality -- which must be direct, definite, and capable of demonstration – "ordinarily requires a fact-intensive inquiry").

III. **Conclusion**

The District Court's Order requires Verneus to designate an impartial appraiser. Based on the unique and special combination of circumstances described above, the Undersigned concludes that Verneus has not established that Boaziz is impartial, so the Undersigned **grants** Axis's motion to disqualify.

Verneus shall designate an alternate, impartial, competent appraiser by **July 24, 2018**, and the parties will then comply with the remaining provisions of Judge

Martinez's Order. [ECF No. 48]. Specifically, the two appraisers shall choose an Umpire, who will only get involved by setting the amount of loss if the two appraisers fail to agree.

If any party wants the Undersigned to reconsider this Order, then an appropriate motion may be filed by **July 19, 2018**. If a motion were to be filed, then the Undersigned will schedule an evidentiary hearing in which Boaziz and a corporate designee of Stellar will testify and give the parties and the Undersigned the opportunity to more-fully understand Boaziz's history and relationship with Stellar and with the Perry and Neblett law firm.

**DONE AND ORDERED** in Chambers, at Miami, Florida, on July 13, 2018.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
All counsel of record