# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

## CASE NO. 16-21863-CIV-MARTINEZ/GOODMAN

ALPHONSINE VERNEUS,

    Plaintiff,

v.

AXIS SURPLUS INSURANCE CO.,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S
## MOTION TO STRIKE PLAINTIFF'S *SECOND* APPRAISER

The idiom "out of the frying pan into the fire" describes a situation where someone moves from a difficult situation into a worse one.[1] It applies to Plaintiff Alphonsine Verneus's efforts to select a *second* impartial appraiser to evaluate the fire loss at issue here. The Undersigned struck[2] Verneus's first designated appraiser, Rami Boaziz, because Boaziz was not impartial -- impartiality being a requirement imposed by Judge Martinez in a valid and unchallenged Order. And yet Verneus has now designated a second appraiser, Alfredo Brizuela, who she earlier disclosed as *her expert*

---

[1] *Out of the frying pan into the fire*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/out-of-the-frying-pan-into-the-fire (last visited August 29, 2018).

[2] *Verneus v. Axis Surplus Ins. Co.*, No. 16-21863-CIV, 2018 WL 3417905 (S.D. Fla. July 13, 2018).

*witness* in this very case.

Given that dynamic, and for the reasons stated below, the Undersigned **grants** Defendant Axis Surplus Insurance Company's motion to strike Brizuela as Verneus's second designated appraiser, because, like the first appraiser, he is not impartial.

As the Undersigned already explained in the Order striking Boaziz, when Judge Martinez granted Verneus's motion for appraisal, "Judge Martinez directed the parties to each 'select a competent *and impartial* appraiser[.]'" [ECF No. 66, p. 4 (citing ECF No. 48, p. 1 (emphasis added))]. Verneus was correct that the relevant policy language requires only that each party select an appraiser who is "competent." [ECF No. 38-3, p. 11]. But Judge Martinez's Order includes an impartiality requirement for the party-selected appraisers. [ECF No. 48, p. 1]. Verneus did not object to the Order's language requiring each side to appoint an "impartial" appraiser and did not move for clarification, reconsideration, or a stay of the Order.

As the Undersigned further explained, it is a "basic proposition that all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Id*. Indeed, "[p]ersons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Id.*; *see also Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193,

1208 (11th Cir. 1985) ("As a fundamental proposition, orders of the court must be obeyed until reversed by orderly review or disrobed of authority by delay or frustration in the appellate process . . . . If the order appears to be incorrect, the proper course of action lies in review[.]") (internal quotations and citations omitted).

Impartiality is therefore a requirement for the parties' chosen appraisers. Verneus was required -- and is *still* required -- to comply with the existing Order and select a competent and impartial appraiser.

The Undersigned already determined that Verneus's first appraiser was not impartial for several reasons. As a result, the Undersigned ordered Verneus to designate an impartial and competent appraiser (as an alternate to Boaziz) and directed the parties to comply with the remaining portions of Judge Martinez's Order. The Order also gave the parties the opportunity to seek reconsideration of the ruling.

Neither party took advantage of that reconsideration opportunity.

Instead, Verneus designated her expert witness, Brizuela, as her appraiser. Verneus disclosed Brizuela as her expert in a June 12, 2017 expert-witness disclosure. [ECF No. 67-4]. After the Undersigned struck Boaziz as the plaintiff-designated appraiser, Verneus's counsel sent a letter to Axis's counsel, informing him that Verneus was choosing Brizuela as the new appraiser and adding, "as you are aware, Mr. Brizuela was previously delineated as an expert in this matter." [ECF No. 67-3].

The previous delineation mentioned in Verneus's counsel's letter refers to

"Plaintiff's Expert Disclosures and Report," which Verneus served on June 12, 2017. [ECF No. 67-4]. The disclosure summarized that Brizuela would be opining on many areas, including fire appraisals:

> Mr. Brizuela has been retained as an expert to testify as to *all aspects* of engineering, construction, architecture, *causation, repairs, damages, scope of damages, remediation, insurance adjusting, appraisal*, inspections, causation, maintenance, property damage, *fire damage*, water damage, insurance policies and insurance practices in general, this insurance policy and the insurer's acts or inactions regarding this claim and case, all information and opinions contained in the each party's expert reports, *damages to the property*, insurance procedures, techniques, costs, the policy at issue, bad faith, state and local licenses and regulations, local codes, statutes and ordinances, insurance industry practices and standards.

[ECF No. 67-4, p. 1 (emphasis added)].

Brizuela's report goes on to include, among other things, a damage assessment, a damage analysis, and an overall opinion on what remediation is necessary. His "professional opinion" on damage is:

> the fire has compromised the structural integrity of the apartment structure. Since it is primarily constructed of framed wood, we recommend replacement. This includes the roofing system over and adjacent to the fire. The rest of the house has been damaged by soot and varying degrees of smoke contamination.

[ECF No. 67-4, p. 18].

Brizuela then adds a "Recommendations" section to his report, in which he outlines the specific areas that should be removed and replaced, such as: (1) "fire damaged wood framing and ceilings at apartment addition"; (2) "all roof membrane, insulation and asphalt shingles"; (3) "all ductwork which is porous and is the primary

4

pathway for contaminants at all interior units"; (4) "all soot damaged building components"; and (5) "all finishes affected by the above noted work[.]" [ECF No. 67-4, p. 18].

According to a schedule attached to Brizuela's report, Brizuela charges $850 for residential inspections of structures up to 2,500 square feet and $1,200 for structures from 2,500 to 3,500 square feet. [ECF No. 67-4, p. 55]. The report describes the residence as an apartment with an adjusted area of 865 square feet, with an additional bedroom and bathroom having been added by enclosing the carport. [ECF No. 67-4, p. 10].

The schedule also notes that Brizuela provides expert-witness testimony in the tri-county area at a rate of $1,400 for a two-hour minimum, with $350 per hour thereafter, plus preparation and travel. [ECF No. 67-4, p. 55]. The disclosure, however, provides that he will be paid at $300 per hour for receipt and review of documents and $400 per hour for deposition testimony and $450 per hour for trial testimony. The disclosure does not use the $350 hourly rate in the schedule.

In any event, the inconsistent representations about Brizuela's hourly rate notwithstanding, the point is that Verneus has paid for Brizuela's expert services (and will likely continue paying him in the future).

Not surprisingly, the insurance contract, which does not contain an express impartiality requirement, does not define impartial. In the Undersigned's earlier Order granting Axis's motion to strike Verneus's initial appraiser, I turned to the Black's Law

Dictionary definition of "impartial": "[n]ot favoring one side more than another; unbiased and disinterested; unswayed by personal interest." *Impartial*, Black's Law Dictionary (10th ed. 2014). Adopting that definition again here, the Undersigned readily finds that Brizuela, who has already given a plaintiff-paid expert report, is neither unbiased nor disinterested and will likely not be unswayed by personal interest.

As noted, Verneus already hired Brizuela as an expert witness in this lawsuit, and he already prepared a report for Verneus as an advocate-type of expert witness (as opposed to a court-appointed expert witness) by the time she selected him as her second purported impartial appraiser. Brizuela's expert opinions for Verneus encompass the very issues he would be deciding as a presumptively neutral appraiser. Verneus's counsel has not taken the position that they have not already paid Brizuela for his professional expert-witness work in this case on Verneus's behalf. Given that relationship, it is difficult to discern how an expert witness paid by one side and who provided a report to that side's counsel could later in the same case transform himself into an impartial appraiser.

The Undersigned finds instructive the case of *Florida Insurance Guaranty Association v. Branco*, 148 So. 3d 488, 496 (Fla. 5th DCA 2014), which held that an attorney could not serve as his insured clients' nominated appraiser when the insurance policy required "disinterested" appraisers. To be sure, a plaintiff-retained expert is not identical to the plaintiff's own attorney. But the relationship between the plaintiff and

an appraiser selected by the plaintiff's counsel as a supposed impartial appraiser undermines the goal of appointing a disinterested or impartial appraiser. *Id.; see also Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 571 F. Supp. 2d 712, 717 (E.D. Va. 2008) (finding that under statute governing parties' appointment of disinterested appraisers to assess insurance losses, disinterestedness of selected appraiser pertains to partiality of appraiser for or against specific parties to dispute).

In this case, as a paid expert for Verneus, Brizuela has already taken a position about the cause of the damages and the scope of the damages. If chosen as the appraiser, then Brizuela would be tasked with doing so again -- but, this time, he would also wearing the hat of an impartial appraiser, rather than one of a party-retained expert. Yet he is unlikely to adopt a different opinion merely because he is now appointed as an appraiser. To the contrary, it seems likely that he would want to maintain his earlier opinion, especially because experts rely in significant part on their reputations, reliability, and consistency.

In the Undersigned's view, the existence of Brizuela's status as a paid expert for Verneus in this very case "creates too great a likelihood that [he] will be incapable of rendering a fair judgment [as an appraiser]." *Branco*, 148 So. 3d at 495 (internal citation omitted). If Brizuela had merely been an expert retained regularly by Verneus's counsel in *other* cases but not this one, then the analysis would be substantively different. But Verneus has not called the Undersigned's attention to any case approving as an

impartial or disinterested appraiser (over a challenge) an expert who had *already been hired by a party in the case and who had already issued an expert report with opinions.*

In short, I am not convinced that Brizuela is an impartial appraiser.

One final observation: Verneus's first appraiser was previously struck because he was not impartial. One would assume that Verneus would then tread carefully when selecting a second, replacement appraiser. It would have been logical and prudent for Verneus to have selected a substitute appraiser free from any issues that could generate a challenge for failing to meet Judge Martinez's impartiality standard. But that's not what happened. Instead, Verneus selected her own retained, paid expert as a supposed impartial appraiser. This decision is, to say the least, surprising. Accordingly, any effort by Verneus to later recover attorney's fees (assuming that she is the prevailing party) might generate a challenge to the fees incurred in litigating this motion.

For now, though, the Undersigned **grants** Axis's motion and strikes Brizuela. Verneus shall have 10 days to give Axis written notice of her replacement appraiser.

**DONE AND ORDERED** in Chambers, at Miami, Florida, on August 29, 2018.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
All counsel of record