UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:16-cv-21863-JEM

ALPHONSINE VERNEUS,

      Plaintiff,

v.

AXIS SURPLUS INSURANCE CO.,

      Defendant.

_____/

**OMNIBUS REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION
TO ENFORCE PAYMENT OF APPRAISAL AWARD AND MOTION TO COMPEL
PAYMENT OF INTEREST PURSUANT TO § 627.4265, FLORIDA STATUTES, AND
FOR SANCTIONS, AND
PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT TO
ADD PLAINTIFF'S RIPE BAD FAITH CLAIM AND ASSERT A CLAIM FOR
PUNITIVE DAMAGES AGAINST DEFENDANT**

Plaintiff Alphonsine Verneus filed two motions relating to the handling of her

insurance claim by Defendant AXIS Surplus Insurance Company: (1) Plaintiff's Motion

to Enforce Payment of the Appraisal Award and Motion to Compel Payment of Interest

Pursuant to Section 627.4265, Florida Statutes, and for Sanctions [ECF No. 72] and (2)

Plaintiff's Motion for Leave to File First Amended Complaint to Add Plaintiff's Ripe Bad

Faith Claim and Assert a Claim for Punitive Damages Against Defendant [ECF No. 78].

Defendant filed opposition responses to both motions. [ECF Nos. 75; 87]. Plaintiff filed

replies in support of her motions. [ECF Nos. 76; 88]. United States District Judge Jose E.

Martinez referred the two motions to the Undersigned for a Report and Recommendations. [ECF No. 80]. The Undersigned held a 2.25-hour Zoom hearing on both motions. [ECF No. 91].

For the reasons detailed below, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's motion to enforce payment of the Appraisal Award, including statutory interest, by requiring Defendant to issue a check made payable solely to her counsel's trust account; and **grant in part**, and **deny in part,** Plaintiff's motion to amend the initial Complaint to add claims for bad faith and punitive damages.

## I.      Background

Plaintiff insured her residence and its contents under a surplus insurance policy (the "Policy") with Defendant. On August 26, 2015, Plaintiff's residence caught fire and sustained significant damage. Plaintiff subsequently filed premises and contents insurance claims under the Policy. Defendant acknowledged coverage, investigated Plaintiff's claims, and determined the amount of the loss. On September 29, 2015, after subtracting the applicable deductibles, Defendant tendered payment to Plaintiff in the amount of $14,468.65 for dwelling damages and in the amount of $1,209.57 for contents loss. [ECF No. 75, p. 1]. Plaintiff contested Defendant's valuation of her loss. [ECF No. 72, p. 3].

On April 11, 2016, Plaintiff filed a civil remedy notice (the "First CRN") with the Florida Department of Financial Services (the "DFS"), alleging violations of Sections

624.155 and 626.9541, Florida Statutes. [ECF No. 87-3, p. 2]. Plaintiff alleged that Defendant failed to comply with the Policy's loss settlement provision because Defendant "failed and/or refused to thoroughly, accurately, and completely investigate and evaluate the insured's insurance claim and damages" and refused to "make sufficient payments in an attempt to drive down any potential settlement" or to "pay for other damages covered by the contract." [ECF No. 87-3, p. 3].

Four days later, on April 15, 2016, Plaintiff filed the instant lawsuit in the Circuit Court of the Eleventh Judicial Circuit of Florida, Miami-Dade County. The initial Complaint consisted of four claims: breach of contract (Count I); breach of Section 627.70131, Florida Statutes (Count II); willful tortious breach of Section 624.155, Florida Statutes (Count III); and declaratory relief (Count IV). On May 24, 2016, Defendant removed the case to this Court. [ECF No. 1].

Within 60 days of the First CRN's filing, on June 10, 2016, Defendant filed its objection with the DFS, requesting that the First CRN "be rejected as it fail[ed] to comply with the requirements as set forth in Civil Remedy Notice of Insurer Violation document provisions as set forth in Florida Statute § 624.155 and Florida case law." [ECF No. 87-3, p. 6]. Defendant further objected to the sufficiency of the First CRN by stating that it "provides only general and incorrect allegations" that were "devoid of any specific facts." *Id.*

On February 23, 2017, upon Defendant's Motion to Dismiss, the Court dismissed

Counts II and IV with prejudice and dismissed Count III without prejudice [ECF No. 30]. Approximately a month and a half later, on April 11, 2017, Plaintiff moved for an appraisal. [ECF No. 38]. On June 22, 2017, the Court granted Plaintiff's Motion for an Appraisal. [ECF No. 48]. Over the following year, the parties litigated over Plaintiff's choice of an appraiser.

On July 28, 2020, the Appraisal Panel issued an Appraisal Award in the amount of $65,421.18. [ECF No. 87-1, p.1]. The total Appraisal Award included $60,107.68 for dwelling damage, $3,813.50 for content damage, and $1,500.00 for lost rent. *Id.*

Between July 31, 2020 and August 6, 2020, the parties argued over who should be included as a payee on the checks to be issued by Defendant. [ECF No. 75, p. 2]. Plaintiff wanted the checks to be written solely to the Perry & Neblett Trust Account (i.e., her attorney's trust account). Defendant informed Plaintiff that the Policy *required* Defendant to include the mortgagee on the check for dwelling damages and the public appraiser on the check for contents damages and loss of rent, unless Plaintiff obtained written waivers from the other payees, stating that they agreed to waive their contractual rights to receive the insurance proceeds from Defendant.

Plaintiff did not provide Defendant with the requested waivers.

On August 21, 2020, Defendant overnighted two checks to Plaintiff: Check No. 1713, in the amount of $44,639.03 for dwelling damages, was made payable to "Perry & Neblett, PA and Ocwen Loan Servicing, LLC and Stellar Public Adjusting and Verneus,

Alphonsine." [ECF Nos. 75, p. 3; 75-5, p. 2], and Check No. 1712, in the amount of

$2,103.93 for contents damages and loss of rent, was made payable to "Perry & Neblett,

PA and Stellar Public Adjusting and Verneus, Alphonsine." *Id.* In the accompanying

letter, Defendant explained:

> Check No. 1713 (dwelling) includes Ocwen Loan Servicing pursuant to the
> terms and conditions of the Policy that shows Ocwen Loan Servicing as the
> mortgagee on the enclosed declarations page. As show[n] on page 8 of 15,
> paragraph 12 (enclosed), the mortgagee named on a policy will be listed
> on any check for dwelling damages. This check also includes Stellar Public
> Adjusting as a payee pursuant to their letter of claim representation, (dated
> August 27, 2015); Agreement for Public Adjusting Services (dated August
> 26, 2015); and their letter of September 28, 2015 requiring payment to
> include Stellar Public Adjusting on the check. Copies of these documents
> are enclosed for your review.

[ECF No. 75-5, p. 2].

On September 11, 2020, Plaintiff rejected both checks and asked that both checks

be reissued. [ECF No. 75-6, p. 2]. In addition to objecting to the other payees on the checks,

Plaintiff objected to the phrase "negotiated settlement," which was written in the memo

sections of the checks.

According to Plaintiff, Defendant's inclusion of the phrase "negotiated settlement"

on the checks was an intentional "backdoor" attempt to circumvent Plaintiff's rights

associated with her insurance claim and the instant lawsuit. [ECF No. 76, p. 2]. "Having

never received any written confirmation from the additional payees on the Appraisal

Award checks, [Defendant] reissued the checks in the same fashion on October 19, 2020

and had same delivered to Plaintiff's counsel via overnight mail on October 23, 2020."

[ECF No. 75, p. 4]. The memo section on the checks indicated that they were issued for "Appraisal Award/Verneus v. AXIS." On October 29, 2020, Plaintiff filed another CRN with DFS (the "Second CRN").

## II.   Applicable Legal Principles and Analysis

Through her motion to compel, Plaintiff seeks full payment of the Appraisal Award (including statutory interest) by a check made payable solely to her attorney's trust account, as well as an award of attorney's fees and costs associated with the filing of her motion. [ECF No. 72]. Through her motion for leave to amend the Complaint, Plaintiff seeks leave to add claims for bad faith and punitive damages. [ECF No. 78].

Defendant opposes Plaintiff's motions, arguing that it complied with the terms of the Policy when it included the payees on the Appraisal Award checks. Defendant also contends that the notations on the checks were harmless and, at most, an inartful choice of words. Finally, Defendant challenges Plaintiff's claim that she is entitled to statutory interest by asserting that payment was sent before the deadline set forth in the Policy and, because Defendant is a surplus insurance carrier, the statutory interest provision in Chapter 627, Florida Statutes, does not apply to it.

AXIS also argues that Plaintiff's motion to amend should be denied because the addition of the proposed causes of action would be futile.

In her replies, Plaintiff rejects Defendant's explanation that the inclusion of the phrase "negotiated settlement" on the check was a harmless scrivener's error and she

contends that it was part of AXIS' over-litigious actions and its attempts to delay the final resolution of Plaintiff's claim and case. She also submitted supplemental authority (*Joseph v. Citizen's Prop. Ins. Co.*, No. 2017AP000131, 26 Fla. L. Weekly Supp. 556a (Fla. 15th Cir. Ct., Sept. 6, 2018) (requiring payment of statutory interest and attorney's fees and costs incurred as a result of an ultimately untimely payment due to a scrivener's error)). [ECF No. 92].

**A. Plaintiff's Motion to Enforce Payment of the Appraisal Award to Plaintiff's Counsel's Trust Account and Including Statutory Interest Should be Denied.**

Plaintiff argues that Defendant should "reissue payment pursuant to the Appraisal Award payable to 'Perry & Neblett, Trust' and this payment shall include all due interest pursuant to Florida Statute Section 627.4265." For the reasons that follow, the Undersigned **respectfully recommends** that Judge Martinez **deny** Plaintiff's motion.

**i. Plaintiff should have accepted Defendant's payment of the Appraisal Award that included payees in accordance with the terms of the Policy.**

The plain language of the Policy requires Defendant to include the mortgagee and public adjuster on the check for dwelling damages and the public adjuster on the check for contents damages and loss of rent. Specifically, the Policy contains a payment provision, which provides:

> **Loss Payment.** We will adjust all losses with you. We will pay you *unless some other person is named in the policy or is legally entitled to receive payment*. Loss will be payable 60 days after we receive your proof of loss and:
> a. Reach an agreement with you;

b. There is an entry of a final judgment; or
c. There is a filing of an appraisal award with us.

[ECF No. 75-7, p. 10] (emphasis added).

The Policy also contains a mortgage clause, which provides:

**Mortgage Clause.**
                                    * * *
If a mortgagee is named in this policy, any loss payable under ["Dwelling"
coverage] or ["Other Structures" coverage] *will be paid to the mortgagee and
you*, as interests appear.

*Id.* (emphasis added).

The Policy between Plaintiff and Defendant specifically identifies Ocwen Loan

Servicing, LLC ("Ocwen") as the mortgagee of the property. [ECF No. 38]. Therefore, the

plain language of the Policy required Defendant to include Ocwen as a payee on the

Appraisal Award check for dwelling loss.

Under Florida law, where a mortgage gives the mortgagee the right to receive and

apply insurance proceeds to the repair of mortgaged property or to apply the proceeds

to mortgage debt, as it does here, Florida courts uphold such rights. *Sussman v. Weintraub*,

No. 06-20408 CIV, 2006 WL 3662640, at *1 (S.D. Fla. Nov. 7, 2006). (holding that mortgagee

was entitled to receive insurance proceeds, which could be applied to the outstanding

principle on the mortgage rather than on property repairs, because the mortgagee was

conferred that right under the mortgage provisions). *See also, Cayer v. Mid-State Fed. Sav.*

*Bank*, 150 B.R. 829 (Bankr. M.D. Fla. 1993) (holding that, under the mortgage provision,

the mortgagee's right to receive the insurance proceeds was fixed at the time of the loss);

8

*Sea Isle Operating Corp. v. Hochberg*, 198 So. 2d 336 (Fla. 3d DCA 1967) (same).

In this case, Ocwen was identified on the declaration page of the Policy as the mortgagee. Despite Plaintiff's requests that Defendant make the Appraisal Award check payable solely to the Perry & Neblett Trust, Defendant was contractually required to include the mortgagee, Ocwen, on the check. Importantly, the mortgage gives Ocwen the right to use the money to repair the Property or to apply the insurance proceeds to any outstanding principal on the mortgage. Specifically, the mortgage provides as follows:

> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. *Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by the Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and the Lender's security is not lessened.* During such repair and restoration period, Lender has the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to insure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest on earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to the Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

[ECF No. 75, p. 6] (emphasis added).

Additionally, the public adjuster put Defendant on notice of its representation of

Plaintiff for the claimed fire loss. The initial Notice of Claim Representation was sent via email and facsimile transmittal on August 27, 2015. [ECF No. 75-5, p. 9]. The public adjuster also provided Defendant with its Agreement for Public Adjusting Services, which specifically provides as follows:

> [Plaintiff] authorizes and requests [Defendant] to have [the public adjuster] appear as an additional payee on all checks issued by [Defendant] with regard to the above claim. [Plaintiff] hereby grants [the public adjuster] a lien on recovered proceeds received by [Plaintiff] to the extent of the fee due to [the public adjuster] pursuant to this Agreement.

[ECF No. 75-5, p. 11].

On September 28, 2015, Defendant received the public adjuster's "7 Day Letter With Required Response," which demanded that all undisputed insurance proceeds be paid by "a check made payable to [Plaintiff] and [the public adjuster]" within seven days. [ECF No. 75-5, p. 12]. Thus, Defendant argues that if it had made payment solely to Perry & Neblett Trust, then it would have exposed itself to a civil action by the public adjuster.

Finally, Defendant specifically asked Plaintiff to provide Defendant with written permission from the additional payees on the Appraisal Award checks to allow Defendant to remove them. [ECF No. 75-7, p. 1]. Plaintiff did not do so. Accordingly, Defendant included Ocwen and the public adjuster on the reissued checks pursuant to the terms of the Policy.

### ii. The check should not include statutory interest because Section 627.4265 does not apply to Defendant.

Plaintiff argues that Defendant owes her statutory interest due to Defendant's

"failure to issue proper payment in a timely manner." [ECF No. 76, p. 5]. However, surplus lines policies are not subject to the same statutory and regulatory scheme as policies issued by admitted insurers. Indeed, Section 626.913, Florida Statutes, explains that Chapter 627 does not apply to surplus lines insurers unless specifically stated otherwise. *See* Fla. Stat. § 626.913(4) ("Except as may be specifically stated to apply to surplus line insurers, the provisions of chapter 627 do not apply to surplus lines insurance authorized under Sections 626.913-626.937, the Surplus Lines Law."). The parties do not dispute that Defendant is a surplus lines insurer. Therefore, Defendant does not have a duty to pay statutory interest to Plaintiff.

Additionally, the Policy provides that payment would not be due until sixty (60) days after an Appraisal Award had been provided to Plaintiff. Because the Appraisal Award was provided to Plaintiff on July 28, 2020, payment was not due until September 26, 2020. Defendant sent the original Appraisal Award checks, made payable to the proper payees, to Plaintiff on August 21, 2020 by overnight mail. Therefore, Defendant provided Plaintiff with the Appraisal Award checks well before the deadline set forth in the Policy.

Finally, I am not convinced that the notation of "negotiated settlement" in the memo sections of the Appraisal Award checks would have constituted acceptance of the amount payable thereon as full and final settlement of the underlying insurance claim upon negotiation of the checks. First, the checks did not contain binding endorsements

stating that the negotiation of same was a full and final settlement of the underlying insurance claim. Second, Plaintiff provided no legal support for her contention that the phrase "negotiated settlement" in the memo section of her checks would have constituted full and final settlement of her insurance claim if she had cashed the checks. Therefore, I find that Plaintiff needlessly rejected Defendant's original Appraisal Award checks and is not entitled to statutory interest.

      iii.  **Plaintiff's request for an award of litigation costs and attorney's fees should be denied.**

For the reasons stated above, I also reject Plaintiff's claim that she is entitled to an award of litigation costs and attorney's fees. The facts simply do not support Plaintiff's claim that Defendant intentionally delayed final resolution of Plaintiff's case and underlying insurance claim by issuing improper Appraisal Award checks. Unlike the check at issue in *Joseph v. Citizens*, the checks at issue here were in fact made out to the correct payees. The mere fact that Plaintiff and her attorney incorrectly demanded that the checks be issued to different payees does not mean that Defendant issued a late payment due to a scrivener's error.

Accordingly, I **respectfully recommend** that Judge Martinez **deny** Plaintiff's motion to enforce payment of the Appraisal Award by requiring Defendant to reissue checks that are made payable solely to her counsel's trust account, which include statutory interest.

**B.    Plaintiff's Motion to Amend to Add Claims for Bad Faith and Punitive Damages Should Be Granted in Part and Denied in Part.**

Plaintiff seeks to add a bad faith action pursuant to Section 624.155, Florida Statutes (the "Bad Faith Statute"), against Defendant concerning her claim that arose from the fire loss. She also seeks punitive damages relating to her bad faith claims. Defendant opposes Plaintiff's motion to amend by arguing that the First CRN and Second CRN were too vague and conclusory to satisfy a condition precedent for her bad faith cause of action. [ECF No. 87, pp. 10-11]. As such, Defendant argues that Plaintiff's proposed amendment to the Complaint would be futile.

Additionally, Defendant contends that Plaintiff's proposed claim for punitive damages is deficient because Plaintiff failed to provide any evidentiary support for her bad faith claims that would entitle her to punitive damages. Therefore, Defendant argues that Plaintiff's motion for leave to amend the Complaint to add a claim for punitive damages should also be denied.

### i.  Plaintiff should be permitted to add a claim for bad faith.

A motion for leave to amend rests within the sound discretion of the District Court. *Foman v. Davis*, 371 U.S. 178, 181 (1962). However, where the amendment would be futile, the court should deny leave to amend a complaint pursuant to Federal Rule of Civil Procedure 15. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004); *Stone Tech. (HK) Co., Ltd. v. Globalgeeks, Inc.*, 2020 WL 6334409, at *4 (S.D. Fla. Oct. 28, 2020); *Suros v. Vertilux Limited*, 2020 WL 3183527, at *1 (S.D. Fla. June 15, 2020); *Thompson v. City of Miami*

13

*Beach*, Fla., 990 F. Supp. 2d 1335, 1343 (S.D. Fla. 2014). An amended complaint is deemed futile where the amended complaint, as amended, would still be subject to dismissal. *Dysart v. BankTrust*, 516 F. App'x 861, 865 (11th Cir. 2013).

The Bad Faith Statute provides a right of recovery to insureds when an insured has been damaged by an insurance carrier's violation of certain statutes when adjusting and paying a loss pursuant to an insurance contract. The filing of a proper CRN is a condition precedent to bringing a civil action pursuant to the Bad Faith Statute. *Pin-Pon Corp. v. Landmark Am. Ins. Co.*, 500 F. Supp. 3d 1336, 1339 (S.D. Fla. 2020).

Pursuant to the Bad Faith Statute, an insured shall utilize a form issued by the department and shall state with specificity the following information, and such other information as the department may require:

1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.

2. The facts and circumstances giving rise to the violation.

3. The name of any individual involved in the violation.

4. Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

Fla. Stat. § 624.155(3)(b).

14

In the proposed Amended Complaint, Plaintiff alleges violations of Sections 624.155(1)(b)(1) and 624.155(1)(b)(3), which basically make it unlawful for an insurance company to fail to "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under those facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." [ECF No. 78-1, p. 11].

Essentially, Plaintiff alleges that Defendant did not conduct a proper investigation of her claim before providing payment, which was 122.672% lower than the Appraisal Award; blatantly refused to pay statutory interest pursuant to Section 627.4265, Florida Statutes; knowingly and intentionally attempted to eliminate many of Plaintiff's rights by inserting settlement language on its payment drafts to Plaintiff; and held on to Plaintiff's money, even though Defendant knew that Plaintiff was entitled to a higher payment amount for her insurance claim.

Defendant argues that the CRNs lacked the requisite specificity to provide Defendant with an opportunity to cure. According to Defendant, "Plaintiff's complete failure to comply with Fla. Stat. § 624.155(3)(b)(2) by specifically listing all circumstances that give rise to the claimed violations precludes the Plaintiff from proceeding with a civil action based upon Fla. Stat. §624.155." [ECF No. 87, p. 10].

The Undersigned disagrees. Where a party seeking to comply with a notice statute fails to meet the requisite level of compliance, a court may allow an action to proceed if

the defect was of a purely technical nature, the party substantially complied, the notice purpose of the statute has been fulfilled, and the opposing party has not been prejudiced by the error. *Pin-Pon*, 500 F. Supp. 3d at 1345. Here, there is no dispute that Defendant had actual notice of Plaintiff's intent to bring a statutory bad faith action. Moreover, Defendant does not assert, nor does the record indicate, that Defendant was prejudiced by Plaintiff's less-than-strict compliance with § 624.155's notice requirements.

Lastly, I note that this result corresponds with the Legislature's intent in enacting § 624.155. The Legislature intended for the statute to provide a remedy to aggrieved insureds. *Id.* at 1346. The notice requirement was not meant to hinder such a remedy, but, rather, to encourage the early resolution of statutory bad faith claims, avoid unnecessary litigation, and facilitate the Department of Financial Service's monitoring of the industry. *Id.*

To foreclose an insured's opportunity to recover damages for alleged bad faith conduct by an insurer on purely technical grounds where the insurer unquestionably had notice of the insured's intent to bring the action and where the insurer was not prejudiced by the technical defects would seem to run counter to the Legislature's purpose behind enacting this remedial statute with its pre-suit notice requirement. Accordingly, the Undersigned **respectfully recommends** that Judge Martinez **grant** Plaintiff's motion for leave to amend as to her proposed cause of action for violation of the Bad Faith Statute.

16

### ii. Punitive damages are not available for violations of Section 624.155, Florida Statutes.

Finally, the Undersigned **respectfully recommends** that Judge Martinez **deny** Plaintiff's motion for leave to include a claim for punitive damages in her Amended Complaint. The Bad Faith Statute, itself, provides that punitive damages shall not be awarded under Section 624.155 unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice. The acts that would indicate a general business practice include acts that are:

(a) Willful, wanton, and malicious;

(b) In reckless disregard for the rights of any insured; or

(c) In reckless disregard for the rights of a beneficiary under a life insurance contract.

Fla. Stat § 624.155 (5). Because no such facts have been alleged that would indicate that Defendant's general business practices frequently violate the Bad Faith Statute, Plaintiff's motion for leave to add a claim for punitive damages should be **denied**.

## III.  Conclusion

For these reasons, the Undersigned **respectfully recommends** that Judge Martinez **deny** Plaintiff's motion to enforce payment of the Appraisal Award, plus statutory interest, by requiring Defendant to issue a check made payable solely to her counsel's trust account; and **grant in part**, and **deny in part**, Plaintiff's motion to amend the Complaint to add claims for bad faith, and punitive damages.

## IV.    Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Judge Martinez. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2020).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on June 16, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
All Counsel of Record

18